### HUDGINS v. UNITED STATES.
### Civ. A. No. 9475.

United States District Court
E. D. Pennsylvania.

July 2, 1954.

Martin Silvert, Philadelphia, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, District Judge.

In Philadelphia at approximately 5:00 A. M. on November 20, 1948, plaintiff, Eugene A. Hudgins, was driving his 1942 Buick two-door sedan at a speed of 15 to 20 miles an hour eastwardly in the eastbound or southern half of the wide two-way center street (hereinafter referred to as the "highway") of the Benjamin Franklin Parkway and approaching the intersection of 21st Street,[1] which runs one-way northbound. It was dark and hazy and raining heavily. Visibility was very poor.

The traffic light, which is at the southeast corner of the intersection of the highway and 21st Street, was green in

---

[1] At 21st Street the Parkway consists of three streets separated by two grass islands. The northern street, which is 28 feet wide, is one-way westbound. The center street (or "highway"), which is the one involved in the present case, is 80 feet wide and two-way, eastbound and westbound. Both the northern and southern streets are separated from the highway by a grass island approximately 25 feet in width.

Hudgins' favor. He first discovered the green light when he was about 10 or 15 feet west of 21st Street and about 60 feet west of the traffic light. Immediately before crossing 21st Street Hudgins looked to his right and to his left and saw no other vehicle approaching the intersection. Upon entering the intersection Hudgins, who was driving his automobile about four feet north of, and parallel to, the south curbline of the highway, slowed down to about 8 miles an hour. After proceeding half-way across 21st Street Hudgins for the first time saw defendant's mail truck, ten feet to his right and heading northward on 21st Street straight toward his Buick at a speed of about 20 miles an hour. The mail truck was being driven by Calvin J. Whaley, a United States Post Office employee acting within the scope of his employment and engaging in defendant's business.

The left front wheel and fender of the mail truck struck the right front wheel and fender of the Buick. Both vehicles were heavily damaged. The engine of the Buick was pushed back into the front seat and the entire front end was smashed in. The damage to the Buick resulting from the collision amounted to $925.[2]

■■■■■ The collision and resultant property damage and personal injuries sustained by plaintiff were caused solely by the negligence of defendant's employee, Calvin J. Whaley. He was negligent in his operation of the mail truck in that (1) he was travelling at an excessive speed under the circumstances, (2) he failed to have the mail truck under proper control, and (3) he disobeyed the direction of the traffic signal at the southeast corner of the intersection, in violation of the Pennsylvania Vehicle Code. 75 P.S. § 635. Hudgins had the green light in his favor, had entered the intersection before the mail truck, and had no opportunity to get out of the mail truck's way in order to avoid the collision. Under these circumstances, I find that plaintiff was free from contributory negligence.

There was a direct conflict between plaintiff's testimony and that of Whaley, the mail truck driver. Plaintiff testified that he had the green light in his favor until the collision occurred. Whaley testified that before entering the highway he saw plaintiff's car 25 feet west of 21st Street and proceeding eastwardly on the highway toward 21st Street; that Whaley had the green light upon entering the highway; that after entering the highway he did not again look to his left (toward plaintiff's car); that after the mail truck had gotten half way across the (eighty-foot wide) highway the light changed to yellow and Whaley immediately began to apply his brakes; and that the collision occurred as he began to apply his brakes.

If Whaley's version of the accident were true, it would by necessary implication place the collision well into the northern or westbound side of the highway, because when the left front wheel of the mail truck struck the right front wheel of the Buick the front of the mail truck was more than half way across the highway, according to Whaley's testimony. If the collision occurred on the northern or westbound side of the highway, Hudgins would have to have been driving on the wrong side of the highway (that is, eastwardly on the westbound side). But nowhere in his testimony has Whaley stated or even attempted to imply that Hudgins was driving on the wrong side of the highway immediately preceding the accident. Indeed, in one portion of his testimony Whaley states that the collision occurred about the middle of the highway (N.T. 74) and not well into the northern or westbound side as his detailed account of the accident would imply (N.T. 72–73). Furthermore, counsel for the Government has never contended that Hudgins was driving on the wrong side of the highway.

2. The value of plaintiff's car before the collision was $1,200. After the collision the car was worth $275 and was sold for that amount.

■ Whaley's testimony with respect to the site of the accident is vague, confusing and inherently contradictory. I find, in accordance with plaintiff's version of the accident, that the collision occurred in the southern or eastbound side of the highway and a little more than half way across 21st Street.

After the collision plaintiff became unconscious. He was taken to St. Joseph's Hospital where he quickly regained consciousness, remained for about six hours, and was treated for the injuries he sustained in the accident.

He had a puncture wound in his tongue which required four sutures. His chest was strapped for fractures of the second and fourth right ribs. He had minor cuts on the left leg below the knee, on the right wrist, and over the right eye and a slight bruise on the left forehead. Merthiolate was applied to the cuts and bruises.

For about six weeks Hudgins visited the hospital twice a week as an out-patient to have his strappings changed and to have two sutures removed from his tongue after four weeks and the remaining two removed ten days thereafter.

After the sutures were removed plaintiff was tongue-tied for about three or four months, at the end of which time he had completely recovered his normal speaking ability.

At the time of the accident plaintiff was on temporary furlough from his automobile assembly job at the Budd Company. He was recalled to work on December 1, 1948, but was unable to return because of his injuries. He attempted to resume work on January 11, 1949, but was able to do the heavy press shop work, to which he was then assigned, for only about 3 hours. He finally returned to work on February 2, 1949. Since that time he has been doing either assembly work or laborer's work depending on the employment situation. Whenever he has been laid off from assembly work because of a cutback in employment and his low seniority status, he has voluntarily bypassed press shop work, which is the classification between assembly work and laborer's work, claiming that press shop work is too heavy and strenuous for him. If press shop work is too heavy for him, his inability to handle it is not attributable to any disability resulting from the accident.

■ Plaintiff's only evidence in support of his claim for permanent injuries is a small lump on his chest which he exhibited to the Court. He called no doctors to the stand to testify in his behalf with reference to his alleged permanent injuries. His own testimony in regard to his inability to do press shop work is not convincing. I find that plaintiff has sustained no permanent disability as a result of the accident and that therefore he is not entitled to an award for future loss of earnings.

■ However, plaintiff is entitled to reimbursement for his loss of wages from December 1, 1948, to February 2, 1949, a period of nine weeks at $75 per week, or a total of $675.

■ For his pain and suffering and the inconvenience of being tongue-tied for several months plaintiff is entitled to an award of $2,000.

To recapitulate: defendant is liable to plaintiff for damages amounting to $3,600, consisting of $925 for damage to the automobile, $675 for past loss of earnings, and $2,000 for pain, suffering, and inconvenience.

As to defendant's counterclaim for damages to the mail truck I find in favor of the plaintiff.

The statements of fact and law contained in the foregoing opinion will constitute the Court's findings of fact and conclusions of law in the case.

Judgment may be entered in accordance with the foregoing opinion.